Royal DL Bond, Esq. SBN:346254
BOND LAW LEGAL GROUP
30141 Antelope Rd D228
Menifee, CA 92584
1(844) 476-9254| 1(844) 464-0904
royal@bondlawlegal.com

Attorney for Plaintiffs LOUIS HALL III and LASHAWN D. LEWIS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| LOUIS HALL III, an individual; and LASHAWN D. LEWIS, an individual, | Case No: Judge: Dept.: |
| Plaintiffs, | |
| v. | |
| RIVERSIDE COUNTY; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; SHERIFF CHAD BIANCO; CAPTAIN FLAKES; LIEUTENANT RAMEREZ; DEPUTY SALZAR; DEPUTY TOVAR; SHERIFF DENNIS VROOM; AND DOES 1-10, INCLUSIVE, | **VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF** |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | Complaint Filed: Trial Date: TBD |

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1343(c) (Civil Rights).

---

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**1**

2.   The State law claims for relief are within the supplemental jurisdiction of this Court, pursuant to 28 U.S.C.§1367 – because all these issues arise from a common nucleus of operative facts and/or the same transaction or occurrence.

3.   Plaintiff's claims herein arise out of an incident involving the County of Riverside Sheriff's Department, in the County of Riverside, State of California and within this Judicial District; as such, venue is proper in this District.

4.   Pursuant to California Code of Regulations, Article 1 - Administrative Remedies for Inmates and Parolees, Section 3483 - Grievance Review, Plaintiffs have exhausted all Administrative Remedies.

5.   Government Claims Act (Gov. Code §§ 800 / 900 et. seq.).  Per this requirement and as delineated in the statutes (also sometimes referred to as the "California Torts Claims Act"), Plaintiffs timely presented their government claim to the Defendants in accordance with the statutes – a condition precedent arguably required to the maintenance of any cause of action against a public entity.  Plaintiffs presented a timely governmental tort claim with the County of Riverside, Office of the Clerk of the Board of Supervisors in accordance with Government Code §945.6. (*Exhibit 1 & 2*).

6.   Subsequently, the County of Riverside, Office of the Clerk of the Board of Supervisors, rejected Plaintiffs' claims on September 14, 2023.  Plaintiffs' claims against Defendants have now blossomed into this instant matter before the Court.

## **THE PARTIES**

7.   Plaintiff LOUIS HALL III ("HALL"), a natural person of mature age, is a private individual within the meaning of California law and is a Citizen of the State of California, and at all times relevant hereto an inmate of the County of Riverside, State of California.

8.   Plaintiff LASHAWN D. LEWIS, ("LEWIS") a natural person of mature age, is a

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**2**

private individual within the meaning of California law and is a Citizen of the State of California, and at all times relevant hereto an inmate of the County of Riverside, State of California.

9.   Defendant Riverside County ("COUNTY"), is a county located in the southern portion of the U.S. state of California.  Co-Defendants are employed by Riverside County. Municipal departments within Riverside County are Banning, Beaumont, Blythe, Calimesa, Cathedral City, Corona, Desert Hot Springs, Hemet, Indio, Menifee, Murrieta, Palm Springs, Riverside, and Riverside Community College.  The COUNTY is being sued in its official capacity.

10. Defendant Riverside County Sheriff's Department ("SHERIFF's DEPT."), was at all times relevant to this matter, employed by Riverside County, a law enforcement agency. The SHERIFF's DEPT. provides court protection, jail administration, and coroner services for all of Riverside County. It provides patrol, detective, and other police services for the unincorporated areas of the county plus by contract to certain cities.  The SHERIFF's DEPT is being sued in its official capacity.

11. Defendant Sheriff Chad Bianco ("BIANCO") was at all times relevant to this matter a Sheriff, employed for the Riverside County Sheriff's Department, Cois Byrd Detention Center ("CBDC"). BIANCO is being sued in his official and individual/personal capacity. Custom of the SHERIFF's DEPT. was under the supervision and enforcement of BIANCO, at all times relevant to this action.  BIANCO acted under color of law and personally participated in the actions complained herein.

12. Defendant Sheriff Dennis Vroom ("VROOM") was at all times relevant to this matter a Sheriff, employed for the Riverside County Sheriff's Department, Cois Byrd Detention Center ("CBDC").  VROOM is being sued in his official and individual/personal capacity. Custom of the SHERIFF's DEPT. was under the

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**3**

supervision and enforcement of VROOM, at all times relevant to this action. VROOM acted under color of law and personally participated in the actions complained herein.

13. Defendant Captain Flakes ("FLAKES") was at all times relevant to this matter a Captain, employed for the Riverside County Sheriff's Department, Robert Presley Detention Center ("RPDC"). FLAKES is being sued in his individual/personal capacity. At all times relevant to this action, Defendant acted under color of law and personally participated in the actions complained herein.

14. Defendant Lieutenant Ramirez ("RAMEREZ") was at all times relevant to this matter a Lieutenant, employed for the Riverside County Sheriff's Department, Robert Presley Detention Center ("RPDC"). RAMEREZ is being sued in his individual/personal capacity. At all times relevant to this action, Defendant acted under color of law and personally participated in the actions complained herein.

15. Defendant Deputy Salzar ("SALZAR") was at all times relevant to this matter a Deputy, employed for the Riverside County Sheriff's Department, John J. Benoit Detention Center ("JBDC"). SALZAR is being sued in his individual/personal capacity. At all times relevant to this action, Defendant acted under color of law and personally participated in the actions complained herein.

16. Defendant Deputy Tovar ("TOVAR") was at all times relevant to this matter a Deputy, employed for the Riverside County Sheriff's Department, John J. Benoit Detention Center ("JBDC"). TOVAR is being sued in her individual/personal capacity. At all times relevant to this action, Defendant acted under color of law and personally participated in the actions complained herein.

17. At times when relevant, Plaintiffs will be collectively referred to as "Plaintiffs."

18. At times when relevant, Defendants will be collectively referred to as "Defendants."

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**4**

19. Plaintiffs are informed and believe, and on that basis allege, that during the times mentioned herein, Defendants collectively, and each of them are also the agents, employees, partners, joint venturers, representatives, coconspirators, and assigns of their co-defendants and were, as such, acting within the scope, course, and authority of such agency, employment, partnership, joint venture, representation, conspiracy, and/or assignment, unless the context states otherwise.

20. If Plaintiffs are currently ignorant of any true names and capacities, whether individual, corporate, associates or otherwise, of any unnamed Defendant(s) to be rightfully sued herein, Plaintiffs will seek leave amend this complaint to allege their true names and capacities when ascertained – per FRCP 15(c) (Relation Back of Amendments).

## **STATEMENT OF FACTS**

21. This action arises from Defendants violating Plaintiffs' civil rights while being incarcerated at the RPDC, CBDC, and JBDC jails.  Plaintiffs were subjected to Civil Rights violations daily, while under the care and custody of Defendants due to their practices and custom, during August 1, 2023 to September 14, 2023.

22. From August 1, 2023 to August 15, 2023, Defendants of RPDC executed weekly and daily cell/strip searches upon Plaintiffs by forcing them to perform multiple cavity-checks and to strip bare naked more than three (3) occasions, violating Plaintiffs' civil rights.  Commencing about August 12, 2023, Defendants began retaliating against Plaintiffs for their attempts and submissions of jail grievances and for speaking up against sexual abuse by staff upon inmates.

23. During the strip searches, while Plaintiffs were naked, Defendants forced Plaintiffs to perform sexual poses, made dehumanizing sexual comments to Plaintiffs and sexual

advances to him.  Further, Defendants used a flashlight and other similar devices to sexually harass and abuse Plaintiffs, forcing them to perform a sexual strip tease for them.

24. While using the flashlight, Defendants turned it on and off, moving it around and in Plaintiffs' anus hole opening, making sexual comments and advances for their own gratification and sexual pleasures, described herein.

**Robert Presley Detention Center "RPDC" Jail**

25. On August 11, 2023, at 2am, while in 4A dayroom 2, Inmate Nunez overdosed in cell #21.  Nurses, Fire Dept., and Deputies responded 30 minutes later.  Inmate Nunez was transferred to the hospital.  Approximately 3am Defendants came to 4A dayroom 2 and informed inmates that the entire dayroom will undergo a search.  Defendants escorted everyone to the elevator, down to transportation where everyone received body scans.  Subsequently, Defendants escorted inmates to intake, an excluded area, where Plaintiffs and other inmates were forced to perform a degrading and harassing strip search, violating their Fourth and Fourteenth Amendment Rights.

26. Plaintiffs were forced to strip naked and grab their testicles, swipe with opposite hand three (3) times under, pull back the foreskin of their penis, turn around and squat, while coughing three (3) times, bend at the waist and grab their buttock cheeks and spread them apart, as far as, Plaintiffs could, while Defendants violated them with their flashlight.  Defendants used the flashlight to purportedly examine Plaintiffs' anuses to determine whether they had contraband inside their anuses.  Thereafter, Plaintiffs were issued clothing and returned back to their cells.  Plaintiffs requested grievance forms and were told the forms will be handed out on a walk-threw.  The grievance forms were never handed out as promised and the staff went home.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**6**

27. Also, on August 11, 2023, Plaintiffs requested a visit from their attorney to describe the strip-search events and was informed to document the events until she visited.  On August 12, 2023 around midnight Defendants "raided" the dayroom again. Every inmate was escorted to elevator for another body scan.  Inmates were requesting to talk to the Sergeant regarding the illegal strip-searches being performed.  The inmates were being told that the strip-searches were mandatory per FLAKES' orders.  Plaintiffs were escorted to an excluded area and told "you know the drill, strip down and bust it open."

28. LEWIS told Defendants "I ain't busting open nothing and it's against my rights to strip me without probable cause."  Numerous Deputies gathered into the excluded area explaining the search is mandatory and legal.  LEWIS explained "it is illegal to strip-search me unless I am personally suspicious of concealing contraband and I just submitted to a body scan, which did not detect contraband."  The Deputies conversed with each other and called a Corporal and told him the situation regarding LEWIS refusing to perform another strip-search.  The Corporal said "stick him in the O.R. booth (the booth "cell" contains no sink and toilet) and put a (10-7) sticker on the door.

29. LEWIS was escorted to the O.R. cell #5 in intake and Deputy put a 10-7 magnet on the door.  LEWIS asked the Deputy what 10-7 meant, he said (no movement). LEWIS sat in the booth until searches were finished.  The black shirt Deputy came to inform LEWIS that he will be in cell #5 until he complied with the program.  LEWIS said when he gets the opportunity, he will contact his attorney, because his civil rights were being violated.

30. The Deputy asked LEWIS to at least change all his clothing and he could return to his cell without having to strip-search.  LEWIS agreed and was escorted back to the excluded area, where LEWIS removed all his clothing, handed them to the Deputy and he

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

7

placed them in a bag.  Subsequently, the Deputies said "now lift your balls up.  LEWIS told them "No, I didn't agree to this."  The Deputies responded "well you ain't getting shit.  Until you do, you will stand naked all day, we get paid regardless."  LEWIS asked the Deputies to call the Sergeant.  Deputies responded and said "we ain't doing that until you do what you're told."  LEWIS asked for his clothing back and the Deputies said "finish the search and we'll give you new clothes and send you back to your cell.  You can file a grievance all you want."  Under duress, LEWIS lifted his testicles, swiped three (3) times, pulled the foreskin of his penis back and before LEWIS turned around the Deputies said "pinkies in gums."  LEWIS said "I just touched my balls."  The Deputies said "you should have complied the first time and you could've done that first."  LEWIS did as he was told and said that he will be contacting his attorney; Deputies laughed and said "face the wall, you know what to do."  LEWIS squatted and coughed three (3) times. The Deputies said "bend at the waist," while LEWIS was bending, a Deputy said "I got a new L.E.D. light, want to use it?  You'll see all the way threw him."  The Deputies laughed.  LEWIS was able to see a reflection of a large bright light on the wall he was facing and a Deputy says "damn I got to get one of those lights."  After the Deputies finished degrading and humiliating LEWIS, he was given clothing and sent to the elevator to return to his cell.  LEWIS requested grievance forms.  Later that day LEWIS' attorney visited him and he inform her of the three (3) illegal strip-searches.

31. About August 14, 2023, HALL requested to speak to RAMEREZ about the Deputies in his unit, sexually harassing and abusing him and other inmates, constantly forcing them to strip naked for no justifiable reason.  HALL was called out from 4A dayroom 2 to speak with RAMEREZ and a Sergeant for an extended period of time, regarding the strip-searches and mistreatment by staff conducting back-to-back degrading and humiliating strip-searches, violating inmates' civil rights.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**8**

32. HALL informed RAMEREZ and the Sergeant that cavity searches and sexual abuse are being conducted by waking inmates out of their sleep. HALL explained that these illegal searches are being executed out of the cell, around other inmates and Deputies, violating his United States Constitutional Rights.

33. HALL informed RAMEREZ that he is preparing to file legal actions against him for the sexual abuse. HALL requested a grievance and civilian complaint form from RAMEREZ.

34. However, about August 15, 2023, Deputies came to conduct, yet, another strip-search. The bottom tier inmates refused and received write-ups. Staff came to talk to the top tier inmates and promised that this would be their last search if the inmates complied; otherwise, inmates will be placed in isolation (potty wash) and transferred. Plaintiffs, top tier inmates, complied and went through the same degrading and humiliating strip search again and were returned to their cells. Once returned, Plaintiffs requested to speak to RAMEREZ again, because staff are continuing to mistreat inmates and only 4A dayroom 2 is being punished and violated. The Deputies said the Sergeant will come speak with Plaintiffs and the other race's Trustees.

35. On August 16, 2023 the Sergeant came to speak with Trustees and the Sergeant stated, "refusal to comply with staff instructions will result in disciplinary consequences. No Trustee privileges since there are numerous complaints about program and grievances." Plaintiffs stated "we will no longer cooperate in the strip searches; it's a violation of our Fourth and Fourteenth Amendment Rights.

36. On August 17, 2023, LEWIS requested the names and badge numbers of the Deputies who forced the inmates to perform a degrading and humiliating strip-search and he requested multiple grievance forms and was denied them. LEWIS informed the Deputies that he will be informing his attorney the next day on a visit.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**
**9**

37. Instead of protecting Plaintiffs' civil rights against illegal strip-searches, RAMEREZ ordered that Plaintiffs be transferred to another jail, CBDC, and for their property of prized possessions ("personal belongings") to be destroyed.  About August 17, 2023, RAMEREZ's Deputies came into Plaintiffs cell and threw away much of their personal belongings.  Plaintiffs' books, family pictures, important contact information, and legal documents were destroyed. The destruction of Plaintiffs' personal belongings was executed by RAMEREZ's Deputies.

38. However, August 18, 2023, LEWIS was told to roll up, he was being transferred. While LEWIS was in transportation, Deputies stated "don't worry we getting rid of your cellmate too."  LEWIS stated that he has a court order to stay housed at RPDC."  The Deputies responded and said "we don't care what the judge says.  He runs the court and we run the jail.  Now, you can make all the grievances you want in here and good luck getting Responses."

39. Upon HALL returning from a court hearing, he was informed that he is being transferred to CBDC under the orders of RAMEREZ due to HALL's attempts to utilize jail grievances and he was told that he will be missing personal property.  During this time, two of RAMEREZ's Deputies made death threats against HALL; psychologically harassing him about speaking out against being sexually abused.  Grejada said "you're done, Mother fucker.  Nigga I'll kill you.  Grejada went to get his crew; they came with black suites, army suits, helmets, and a camera crew:  Facility cameras and swat team cameras.

40. Finally, while incarcerated at RPDC, Plaintiffs requested shoes daily, recreation, adequate cleaning supplies, and clothing over thirty (30) times and was always denied.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**10**

**Cois Byrd Detention Center "CBDC" Jail**

41. Upon being transferred to CBDC, FLAKES' Deputies made three (3) threats to do harm to HALL, due to HALL exercising his rights to submit grievances and due to his racial ethnicity.

42. FLAKES's Deputies geared up in riot gear to intimidate and create fear in HALL, as they escorted HALL to his cell handcuffed.  HALL was taken to his cell under duress, feeling that his life was presently being threatened if he plans to exercise his rights, being incarcerated there at CBDC.

43. August 22, 2023, LEWIS submitted grievances, along with an attached paper explaining the incidents of sexual abuse on August 11, 12, and 15, 2023.  LEWIS was not provided a response within ten (10) days.  Therefore, September 2, 2023, LEWIS submitted a second grievance to the Lieutenant.  Subsequently, LEWIS submitted a third (3rd) grievance to the Captain and September 8, 2023, LEWIS received a response stating "1st and 2nd grievances were entered in the system for tracking purposes and forwarded to RPDC where the incidents occurred, "findings are pending."  As of September 16, 2023, LEWIS still had not received a response.

44. Since August 19, 2023, LEWIS has been requesting to be housed with inmate HALL due to them being compatible; they were already housed in B-1 dayroom 1.  Plaintiffs were told to put in a request slip with a Classification.

45. About noon, Lieutenant Gomez, Classification Pisceno, and Deputy Price were in the Hallway, while Plaintiffs were returning from Recreation.  Plaintiffs spoke to Classification about their request to be housed together not being honored, Plaintiffs were told "well… when you guys are fuck ups, you got nothing coming."  Lieutenant Gomez,

Classification Pisceno, and Deputy Price told HALL to go to his cell, leaving LEWIS alone.

46. LEWIS was now alone with 5 Deputies and he explained that he is 35 years old, his cellmate is 21-22, he has never been in prison or juvenile hall, and this is his first (1st) time in jail.  LEWIS further explained that he has a 10-year plus, Prison history, three (3) strikes, and would like to be housed with HALL, because they are compatible. Lieutenant Gomez was very rude saying "we're done here."  LEWIS responded "I will be writing you up too."  Lieutenant Gomez said "now that will get you moved."  LEWIS told Lieutenant Gomez that he will be on the lawsuit too.  Lieutenant Gomez, Classification Deputy Pisceno, and Deputy Price sent LEWIS to his dayroom saying "enjoy your day."  LEWIS responded saying "enjoy yours too."

47. September 14, 2023, two (2) Deputies went into HALL's cell, while he was bare naked and sexually harassed him, making comments and threats. While HALL was in bed, he said "I'm naked in the bed."  One of the Deputies said "you don't have any to worry about, I don't want some of that."  Sexually playing.  HALL said "at least let me put my close on."  The Deputies refused and came into the cell anyway.

48. September 14, 2023, LEWIS's attorney visited him around 10am and she returned later to visit HALL and LEWIS together so that they could give her paperwork regarding the sexual harassment, grievances, complaints, and retaliation.

49. That same day, LEWIS filed a grievance.  An hour or two later LEWIS was being told to "roll up."  LEWIS refused.  Staff came to LEWIS's door and said that he is being transferred to Indio and they escorted him to transportation.  LEWIS was told to put his property box on a black cart outside the office, in the transportation Hallway.  LEWIS was placed in a cell until the bus came to transport him to Indio "JBDC."

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**12**

**John J. Benoit Detention Center "Indio" and "JBDC" Jail**

50. Once LEWIS arrived to Indio, he had to undergo a strip search.  LEWIS refused and was discipline for failing to comply. Again, upon LEWIS receiving his personal belongings, he noticed that all his pictures, his phone numbers and addresses, his attorney's card and some legal papers were missing, which were in an envelope that had his name and booking number on it.  LEWIS's remaining legal mail was all over the front and back.

51. September 15, 2023, Sergeant Sultan informed LEWIS that they reviewed the DVR and it showed that the Deputy took his personal belongings box from the bus and handed it to LEWIS.  Although, the personal belongings box was handed to LEWIS, it does not deny the fact that his personal belongings were missing and Southwest Detention Center in Murrieta ("SWDC") is responsible.

52. September 15, 2023, LEWIS sent a 2nd level appeal and response stated that it was unfounded.  September 16, 2023, LEWIS requested to see Mental Health.  LEWIS had an urgent Mental Health issue and he needed to talk to someone.  SALZAR told LEWIS one hour later "Mental Health will try to see you tomorrow and the only way you can see them now is if you want to hurt yourself or somebody."  LEWIS asked for a grievance form.  Twenty (20) minutes later at dinner Feed, LEWIS's cell was capped.  LEWIS asked TOVAR to call Mental Health and she said that she would, when she finishes her walk-through.  LEWIS repeatedly pressed the intercom button and requested names and badge numbers.  Deputies refused to provide LEWIS with the requested information.  The next hour, LEWIS asked TOVAR if she called Mental Health.  TOVAR said that she was too busy and forgot.  LEWIS asked TOVAR for all the information about the staff to complete grievance forms and she provided the information

to LEWIS.  Within that hour, LEWIS wrote grievances against SALZAR, TOVAR, and another Riverside County Sheriff's Department employee.

53. September 17, 2023, LEWIS requested to speak with a Sergeant four (4) different times and every response was "put in a request or grievance, it's the only way to do it, it's the right way."  LEWIS began feeling silenced; however, he still submitted a grievance form to Sergeant Landry and Classification Sergeant Vernal at 4:30pm stating that he is feeling threatened and silenced by Deputies.  LEWIS also requested Mental Health and finally a Mental Health worker came to visit LEWIS.  Mr. Lorraine, a Mental Health worker, came to see LEWIS.  Mr. Lorraine told LEWIS to not disrupt the program; submit grievances to show that you are taking the proper steps.  Mr. Lorraine reiterated that submitting a grievance is the best way to speak with the Sergeant Grejada.

54. September 19, 2023, Sergeant Vernal came to speak with LEWIS and stated that he would check intake for LEWIS's missing personal property; if it is not there, he would refer LEWIS back CBDC since it was responsible for his property.  Sergeant Vernal stated that he would give LEWIS a status the next day on September 20, 2023.

55. On September 20, 2023, LEWIS requested Sergeant Vernal numerous times and Deputies in 4W stated that he would come towards the end of his shift, but he never came.  LEWIS submitted a slip to see Mental Health, in addition to verbally asking to see Mental Health and he was told that they will contact Mental Health, but no results and staff left.  On September 21, 2023, LEWIS asked TOVAR to see Mental Health and she said "I will call, that's it."  LEWIS reminded TOVAR about telling him the same thing days prior and she did not call and later said "she was too busy…"

56. During dayroom time, LEWIS was given a Response to his grievance filed September 16, 2023, but it was not by a Sergeant, in violation of policy.  On September 15, 2023, LEWIS was given another Response, again not by a Sergeant.  September 21,

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**14**

2023, LEWIS wrote a grievance on both issues.  Later that night, Mrs. Gloria, Mental Health worker, came to see LEWIS.  LEWIS let her know how he felt silenced and emotionally distressed about his missing personal belongings, and police retaliation against him and they're not being held accountable.

57. September 22, 2023, LEWIS requested to speak to the Sergeant and Mrs. Gloria of Mental Health and Deputies refused to open and let him out of his cell for dayroom. Once Mrs. Gloria arrived to speak with LEWIS, Deputies let him out of his cell and told him "No dayroom."  LEWIS requested to see Mrs. Gloria, because he was emotionally distressed due to the mishandling of his personal belongings, police retaliation, as well as, the violation of his civil rights, affecting his wellbeing.

58. On September 23, 2023 at 11:25am LEWIS sat in intake waiting until 12:43pm to be interviewed by Deputy Benart about the Prison Rape Elimination Act of 2003 ("PREA") incidents that occurred against him and other inmates while incarcerated at RPDC.  Corporal LaCruz knew that Deputy Benart has not arrive to JBDC when LEWIS was taken at 11:25am to intake.  LEWIS was still made to sit in the holding cell the entire time and told that Deputy Benart was in route to come interview him; Deputy Benart just left.

59. September 25, 2023, during night dayroom, while LEWIS was on the phone, he got called for mail call.  Upon LEWIS arriving to the dayroom window, his mail was handed to him opened.  LEWIS asked for the address that was on the envelope.  LEWIS noticed that his opened mail was legal mail from the Clerk of The Board of Supervisors, The Riverside County Sheriff, and the contents contain information of his claim made against RPDC.  LEWIS wrote a grievance the same day, requesting to see the Sergeant and he was denied.

---

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**15**

60. September 26, 2023, LEWIS wrote another grievance due to his toilet not flushing since September 21, 2023; everyday LEWIS and his cellmate would have to use the toilet outside in the recreation area, which contains cameras showing them while using the toilet and the area is filthy.  The camera sits over the toilet and it is where numerous people cut their hair, leaving hair all over the toilet and sink.  The toilet, sink, and mirror are unsanitary and never get cleaned.  In addition, trash and discarded hair are all over the floor.  LEWIS submitted a grievance that was never responded to.

61. On September 27, 2023, LEWIS requested to use the recreation restroom and was told "no."  Therefore, LEWIS requested to speak to the Sergeant and he was told that the Sergeant was unavailable.  Subsequently, LEWIS and his cellmate refused to lock it down and after a brief standoff they told them to use the recreation area's toilet and close the door behind them. LEWIS and his cellmate were locked out and stayed in the recreation yard for at least two (2) hours, upon such time the Sergeant came to speak to LEWIS.  The Sergeant handed LEWIS two (2) grievances with Responses.  The Sergeant also stated that CBDC left notes stating that LEWIS disrespected staff, that is why he was transferred to JBDC.  LEWIS said to the Sergeant "that is untrue, that's why no write-ups were ever given.  I told them that I was writing SWDC staff up regarding my missing property and got retaliated against and was transferred."  The Sergeant said that he believes his staff over LEWIS.  LEWIS refused to sign the grievances and said that he will appeal and file a lawsuit, to include the Sergeant for condoning the retaliation.  Two (2) hours later, LEWIS was transferred to Banning, which continues to prove that he is being silenced, his grievances are not being heard, and it proves that he is being retaliated against.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**16**

**Municipal Custom and Practices**

62. The repeated strip-searches, subjecting Plaintiffs to sexual abuse, executed at RPDC, demonstrates a custom and practice, which was condoned by superior staff.

63. DEFENDANTS encourage, accept, and cover up subordinates' failure to decrease harsh, cruel, unusual, and punitive living conditions; under DEFENDANTS' supervision, inmates have consistently suffered serious injuries, death in some cases, due to subordinates failing to provide adequate and timely medical care, mental health care, and protection for inmates well-being; inmates are regularly denied emergency-medical and mental healthcare services in adequate time and sometimes medical services in general; doctors or officials delay or deny giving necessary mental, medical, or dental care, or a medical diet. *Grieveson v. Anderson*, 538 F.3rd 763, 779 (7th cir. 2008) (1.5 day delay in treating broken nose); *Smith v. Knox County Jail*, 666 F.3d 1037 (7th cir. 2012) (5 days delay providing emergency medical care); *Brown v. District of Columbia*, 514 F. 3rd 1279 (D.C. Cir 2008); (2 months delay on medical care); *Harrison vs. Barkley*, 219 F. 3rd 132, 138 (2nd cir. 2000) (one year delay for dental care); *Byrd v. Wilson*, 701 F.2d 592 (6th cir. 2013) (Medical diet).

64. The COUNTY trained and supervised its employees, Co-Defendants, who were under the supervision of the Sheriffs, and who had full knowledge of the acts in violation of the inmates' civil rights pursuant to the United States Constitution: First, Fourth, Eighth, and Fourteenth Amendment Rights.

65. Defendants' custom demonstrates the daily care of inmates and unlawful practices utilized for the purpose to intimidate, punish, and/or retaliate against inmates. Plaintiffs were subjected to the following, to include but not limited to, while under the care and control of Defendants: Violation of Court order; frequent denial of grievance forms; non adherence to grievance policy; repeated unjustifiable jail transfers, prior to Plaintiffs

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**17**

obtaining their grievance Responses, in an effort to silence Plaintiff; inmates' personal property stolen or thrown away during jail transfer; death threats; housed in a small cell with overpowered lights approximately 20-30 hours a day with no access to fresh air, a view of sky, and windows; denied daily recreation or time to exercise out-of-cell or provided inadequate recreation, only allowed approximately 1 ½ hours to exercise out-of-cell, once or twice a week in a small cell room or cage; denied adequate programs and only given access to view a small TV for about 14 hours a day; filthy environment, where Plaintiffs are forced to walk around jail barefoot, in underwear, 99% naked on a daily basis; denied shoes or any adequate foot protection; provided one set of clothing a week; forced to exercise on dirt, concrete, and steel barefoot in filth on a daily basis; denied adequate cleaning solution and supplies to clean cell and dayrooms, filth builds up, causing insects to run rampant throughout the jail; Plaintiffs are provided inadequate bedding and clothing (e.g. one set of socks, t-shirt, orange shirt/pants, and boxers/briefs in unusable condition once a week); and Plaintiffs and other inmates subjected to sexual abuse while executing unlawful strip searches on a regular basis due to their established custom of sexual abuse and harassment upon inmates.

66. Defendants of RPDC has admitted in response to Plaintiffs' grievances and in person to the sexual harassment during strip-searches.  Defendants admitted that the strip-searches executed upon inmate, described above, are due to its policy and procedures.  Defendants subjected Plaintiffs to rape pursuant to the municipal's current policies and procedures; in violation of the inmates' safety, security, wellbeing, Federal (P.R.E.A.) Laws, and civil rights.

67. Defendants of the County Riverside and RPDC have a history of physically abusing inmates since about 2008, when ten (10) Deputies severely beat an inmate unconscious in his underwear at RPDC.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**18**

68. Defendants served no reasonable penological goal of said institutions and their conduct was malicious and shocking to the public's interest and trust.

## COUNTS

### COUNT I

**MONELL CLAIM UNDER SECTION 1983, CHAPTER 42,
UNDER THE UNITED STATES CODE**
**(Against All Defendants)**

69. Plaintiffs incorporate by reference each and every allegation contained in the above paragraphs.

70. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. (West v. Atkins (1988) 487 U.S. 42, 48 [108 S.Ct. 2250, 101 L.Ed.2d 40].)

71. "[A]ny person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress. . . ."  (Monell v. New York City Dept. of Social Services (1978) 436 U.S. 658, 691–692 [98 S.Ct. 2018, 56 L.Ed.2d 611].)

72. The elements of a Monell claim are: (1) deprivation of a federal right; (2) some governmental action can be traced to the deprivation, i.e., policy or custom; (3) policy or custom demonstrating the governmental entity's fault, i.e., deliberate indifference; and (4) municipal action that was the moving force behind the federal violation. Dean v. Wexford Health Service, Inc., 18 F.4th 214, 235 (7th Cir. 2021).

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**19**

73. The inadequacy of Defendants' police training is the basis for the deliberate and conscious indifference to the rights, safety, and welfare of Plaintiffs, in total violation of Plaintiffs' Constitutional Rights.  Defendants' unlawful misconduct demonstrates a municipal "policy" or "custom", which is the moving force behind the Constitutional violations, as follow:

74. Plaintiffs' Substantive Due Process and Procedural Due Process were violated with a  conscious indifference to the deprivation of Plaintiffs' life, liberty, and property for no justifiable or sufficient purpose.

75. Plaintiffs' right to speak up against sexual abuse/harassment and to submit grievances are fully protected by the United States Constitution; yet, Defendants denied Plaintiffs their rights and subjected Plaintiffs to unlawful sexual strip-searches, unsanitary living conditions, and cruel and unusual punishment, multiple transfers in an effort to silence Plaintiffs; retaliatory municipal misconduct in violation of Plaintiffs' Substantive and Procedural Due Process.

76. Defendants' custom demonstrates the daily care of inmates and unlawful practices utilized for the purpose to intimidate, punish, and/or retaliate against inmates.  Plaintiffs were subjected to the following, to include but not limited to, while under the care and control of Defendants: Violation of Court's order; frequent denial of grievance forms; non adherence to grievance policy; repeated unjustifiable jail transfers, prior to Plaintiffs obtaining their grievance Responses, in an effort to silence Plaintiff; inmates' personal property stolen or thrown away during jail transfer; death threats; housed in a small cell with overpowered lights approximately 20-30 hours a day with no access to fresh air, a view of sky, and windows; denied daily recreation or time to exercise out-of-cell or provided inadequate recreation, only allowed approximately 1 ½ hours to exercise out-of-cell, once or twice a week in a small cell room or cage; denied adequate programs and

only given access to view a small TV for about 14 hours a day; filthy environment, where Plaintiffs are forced to walk around jail barefoot, in underwear, 99% naked on a daily basis; denied shoes or any adequate foot protection; provided one set of clothing a week; forced to exercise on dirt, concrete, and steel barefoot in filth on a daily basis; denied adequate cleaning solution and supplies to clean cell and dayrooms, filth builds up, causing insects to run rampant throughout the jail; Plaintiffs are provided inadequate bedding and clothing (e.g. one set of socks, t-shirt, orange shirt/pants, and boxers/briefs in unusable condition once a week); and Plaintiffs and other inmates subjected to sexual abuse while executing unlawful strip searches on a regular basis due to their established custom of sexual abuse and harassment upon inmates.  As a result of the aforementioned, LEWIS was in need of immediate Mental Health services, which were denied.

77. Defendants of RPDC has admitted in response to Plaintiffs' grievances and in person to the sexual harassment during strip-searches.  Defendants admitted that the strip-searches executed upon inmate, described above, are due to its policy and procedures. Defendants subjected Plaintiffs to rape pursuant to the municipal's current policies and procedures; in violation of the inmates' safety, security, wellbeing, Federal (P.R.E.A.) Laws, and civil rights.

78. Defendants of the County Riverside and RPDC have a history of physically abusing inmates since about 2008, when ten (10) Deputies severely beat an inmate unconscious in his underwear at RPDC.

79. Defendants served no reasonable penological goal of said institutions and their conduct was malicious and shocking to the public's interest and trust.

80. As a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiffs have suffered economic, psychological, and emotional damages, and Plaintiffs

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

were obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

81. Defendants had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

82. Defendants' conduct intentionally and/or recklessly caused extreme emotional distress to the Plaintiffs and has been intentional, reckless, malicious and oppressive, thereby entitling Plaintiff to recover punitive damages.

## COUNT II

**FIRST AMENDMENT CONSTITUTIONAL RIGHTS
RETALIATION CLAIM
UNDER 42 U.S.C.§1983
(Against the COUNTY, SHERIFF, BIANCO, VROOM, FLAKES, and RAMEREZ)**

83. Plaintiffs incorporate by reference each and every allegation contained in the above paragraphs.

84. To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.

85. Plaintiffs' Substantive Due Process and Procedural Due Process were violated with an indifferent and conscious disregard to the deprivation of Plaintiffs life, liberty, or property for no justifiable or sufficient purpose.

86. Retaliation was promoted and executed against Plaintiffs and other inmates whom exercise their First Amendment Rights, to include but not limited to, as follows:  Upon grievances being submitted based on unlawful staff conduct, a protected activity, Plaintiffs were either transferred to another jail before being heard and obtaining a

response, or would receive a response not pursuant to policy, or Plaintiffs were subjected to cruel and unusual punishment.  Moreover, Plaintiffs were subjected to cruel and unusual punishment, when they refused to obey an illegal order or directive, protected activity, (e.g. ordered to strip naked and sexually abused).

87. As a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiffs have suffered economic, psychological, and emotional damages, and Plaintiffs were obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

88. Defendants had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs.

89. Defendants' conduct intentionally and/or recklessly caused extreme emotional distress to the Plaintiffs and has been intentional, reckless, malicious and oppressive, thereby entitling Plaintiff to recover punitive damages.

## COUNT III

**VIOLATION OF THE FOURTH AMENDMENT**
**CONSTITUTIONAL RIGHTS**
**UNDER 42 U.S.C.§1983**
**(Against the COUNTY, SHERIFF, BIANCO, VROOM, FLAKES, and RAMEREZ)**

90. Plaintiffs incorporate by reference each and every allegation contained in the above paragraphs.

---

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**23**

91. The Constitution, through the Fourth Amendment, protects people from unreasonable searches and seizures by the government.  The Fourth Amendment, however, is not a guarantee against all searches and seizures, but only those that are deemed unreasonable under the law.

92. All searches and seizures under the Fourth Amendment must be reasonable and no excessive force shall be used. Reasonableness is the ultimate measure of the constitutionality of a search or seizure. Searches and seizures with the warrant must also satisfy the reasonableness requirement.

93. Fourth Amendment:  The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

94. Plaintiffs' Substantive Due Process and Procedural Due Process were violated with an indifferent and conscious disregard to the deprivation of Plaintiffs life, liberty, or property for no justifiable or sufficient purpose.

95. As the aforementioned describes, Defendants had a conscious disregard toward Plaintiffs feeling secure, against unreasonable searches and seizures.

96. Defendants executed regular sexual strip searches upon Plaintiffs and if Plaintiffs submit a grievance regarding such conduct, Plaintiffs are transferred to another jail and grievance paperwork, as well as, legal paper goes missing while being transported.

97. As a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiffs have suffered economic, psychological, and emotional damages, and Plaintiffs were obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

24

98. Defendants had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

99. Defendants' conduct intentionally and/or recklessly caused extreme emotional distress to the Plaintiffs and has been intentional, reckless, malicious and oppressive, thereby entitling Plaintiff to recover punitive damages.

## COUNT IV

**VIOLATION OF THE EIGHTH
AMENDMENT CONSTITUTIONAL RIGHTS
UNDER 42 U.S.C.§1983
(Against All Defendants)**

100. Plaintiffs incorporate by reference each and every allegation contained in the above paragraphs.

101. Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel and unusual punishments." In order to prove the defendant deprived the plaintiff of this right, the plaintiff must prove the following additional elements by a preponderance of the evidence: (1) [the plaintiff faced a substantial risk of serious harm] [the plaintiff faced a serious medical need]; (2) the defendant was deliberately indifferent to that [risk] [medical need], that is, the defendant knew of it and disregarded it by failing to take reasonable measures to address it; and (3) the [act[s]] [failure to act] of the defendant caused harm to the plaintiff.

102. Defendants knew of all the cruel and unusual punishment that Plaintiffs were subjected to and disregarded it by failing to take reasonable measures to address it. Defendants' cruel and unusual punishment, included but not limited to: Plaintiffs were frequently ordered by Defendants to undergo strip-searches, exploiting Plaintiffs while

---

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**25**

naked to perform sexual poses, while making dehumanizing sexual comments to Plaintiffs and sexual advances to him.  Also, Defendants would use a flashlight and other similar devices to sexually harass and abuse Plaintiffs, forcing them to perform a sexual strip tease for them. Further, while using the flashlight, Defendants turned it on and off, moving it around and in Plaintiffs' anus hole opening, making sexual comments and advances for their own gratification and sexual pleasure; LEWIS escorted to his cell, upon arrival to CBDC, by Deputies dressed in riot gear, while making death threats; frequent jail transfers after Plaintiffs would submit a grievance regarding sexual abuse and/or staff misconduct, in an effort to silence Plaintiffs; Plaintiffs' personal property stolen or thrown away during jail transfers; housed in a small cell with overpowered lights approximately 20-30 hours a day with no access to fresh air, a view of sky, and windows; denied daily recreation or time to exercise out-of-cell or provided inadequate recreation, only allowed approximately 1 ½ hours to exercise out-of-cell, once or twice a week in a small cell room or cage; filthy environment, where Plaintiffs are forced to walk around jail barefoot, in underwear, 99% naked on a daily basis; denied shoes or any adequate foot protection; provided one set of clothing a week; forced to exercise on dirt, concrete, and steel barefoot in filth on a daily basis; denied adequate cleaning solution and supplies to clean cell and dayrooms, filth builds up, causing insects to run rampant throughout the jail; Plaintiffs are provided inadequate bedding and clothing (e.g. one set of socks, t-shirt, orange shirt/pants, and boxers/briefs in unusable condition once a week); and Plaintiffs and other inmates subjected to sexual abuse while executing unlawful strip searches on a regular basis due to their established custom of sexual abuse and harassment upon inmates.

103. Defendants of RPDC has admitted in response to Plaintiffs' grievances and in person to the sexual harassment during strip-searches.  Defendants admitted that the strip-

searches executed upon inmate, described above, are due to its policy and procedures. Defendants subjected Plaintiffs to rape pursuant to the municipal's current policies and procedures; in violation of the inmates' safety, security, wellbeing, Federal (P.R.E.A.) Laws, and civil rights.

104. The cruel and unusual punishments, also caused Plaintiffs to have a mental health crisis for fear of their life being taken. As a result of the aforementioned, LEWIS was in needed of immediate Mental Health services, which was denied.

105. As a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiffs have suffered economic, psychological, and emotional damages, and Plaintiffs were obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

106. Defendants had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

107. Defendants' conduct intentionally and/or recklessly caused extreme emotional distress to the Plaintiffs and has been intentional, reckless, malicious and oppressive, thereby entitling Plaintiff to recover punitive damages.

## COUNT V

**VIOLATION OF THE FOURTEENTH**
**AMENDMENT CONSTITUTIONAL RIGHTS**
**UNDER 42 U.S.C.§1983**
**(Against All Defendants)**

108. Plaintiffs incorporate by reference each and every allegation contained in the above paragraphs.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

27

109. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

110. The Due Process Clause of the Fourteenth Amendment is the source of an array of constitutional rights.  Defendants were denied their Procedural and Substantive protections, freedom of speech, freedom from cruel and unusual punishment, freedom against retaliation, such as:  Violation of Court's order; frequent denial of grievance forms; non adherence to grievance policy; repeated unjustifiable jail transfers, prior to Plaintiffs obtaining their grievance Responses, in an effort to silence Plaintiff; inmates' personal property stolen or thrown away during jail transfer; death threats; housed in a small cell with overpowered lights approximately 20-30 hours a day with no access to fresh air, a view of sky, and windows; denied daily recreation or time to exercise out-of-cell or provided inadequate recreation, only allowed approximately 1 ½ hours to exercise out-of-cell, once or twice a week in a small cell room or cage; denied adequate programs and only given access to view a small TV for about 14 hours a day; filthy environment, where Plaintiffs are forced to walk around jail barefoot, in underwear, 99% naked on a daily basis; denied shoes or any adequate foot protection; provided one set of clothing a week; forced to exercise on dirt, concrete, and steel barefoot in filth on a daily basis; denied adequate cleaning solution and supplies to clean cell and dayrooms, filth builds up, causing insects to run rampant throughout the jail; Plaintiffs are provided inadequate bedding and clothing (e.g. one set of socks, t-shirt, orange shirt/pants, and boxers/briefs in unusable condition once a week); and Plaintiffs and other inmates subjected to sexual abuse while executing unlawful strip searches on a regular basis due to their established

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

custom of sexual abuse and harassment upon inmates.  As a result of the aforementioned, LEWIS was in needed of immediate Mental Health services, which was denied.

111.  As a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiffs have suffered economic, psychological, and emotional damages, and Plaintiffs were obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

112.  Defendants had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

113.  Defendants' conduct intentionally and/or recklessly caused extreme emotional distress to the Plaintiffs and has been intentional, reckless, malicious and oppressive, thereby entitling Plaintiff to recover punitive damages.

## COUNT VI

**SEXUAL ASSAULT**
**UNDER 42 U.S.C.§1983**
**(Against the COUNTY, SHERIFF, BIANCO, VROOM, FLAKES, and RAMEREZ)**

114.  Plaintiffs incorporate by reference each and every allegation contained in all the paragraphs above.

115.  The Prison Rape Elimination Act of 2003 (PREA; Public Law 108-79) requires the Bureau of Justice Statistics (BJS) to carry out a comprehensive statistical review and analysis of the incidence and effects of prison rape for each calendar year.

116.  PREA applies to all correctional facilities, including prisons, jails, juvenile facilities, military and Indian country facilities, and U.S. Immigration and Customs Enforcement (ICE) facilities.

---

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**29**

117. Staff-on-inmate or staff-on-youth sexual victimization includes both consensual and nonconsensual acts perpetrated on an inmate by staff. Staff includes an employee, volunteer, contractor, official visitor, or other agency representative. Family, friends, and other visitors are excluded.

118. Staff sexual misconduct includes any consensual or nonconsensual behavior or act of a sexual nature directed toward an inmate by staff, including romantic relationships. Such acts include—intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks that is unrelated to official duties or with the intent to abuse, arouse, or gratify sexual desire completed, attempted, threatened, or requested sexual acts occurrences of indecent exposure, invasion of privacy, or staff voyeurism for reasons unrelated to official duties or for sexual gratification.

119. Staff sexual harassment includes repeated verbal comments or gestures of a sexual nature to an inmate by staff. Such statements include—demeaning references to an inmate's sex or derogatory comments about his or her body or clothing repeated profane or obscene language or gestures.

120. Defendants forced Plaintiffs to undergo frequent strip searches.  While Plaintiffs were naked, Defendants forced Plaintiffs to perform sexual poses, made dehumanizing sexual comments to Plaintiffs and sexual advances to him.  Further, Defendants used a flashlight and other similar devices to sexually harass and abuse Plaintiffs, forcing them to perform a sexual strip tease for them.

121. While using the flashlight, Defendants turned it on and off, moving it around and in Plaintiffs' anus hole opening, making sexual comments and advances for their own gratification and sexual pleasures

122. As a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiffs have suffered economic, psychological, and emotional damages, and Plaintiffs

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**30**

were obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

123.  Defendants had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

124.  Defendants' conduct intentionally and/or recklessly caused extreme emotional distress to the Plaintiffs and has been intentional, reckless, malicious and oppressive, thereby entitling Plaintiff to recover punitive damages.

**COUNT VII**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**UNDER 42 U.S.C.§1983**
**(Against All Defendants)**

125.  Plaintiffs incorporate by reference each and every allegation contained in all the paragraphs above.

126.  A cause of action for Infliction of Emotional Distress must plead facts demonstrating (1) extreme and outrageous conduct by the Defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) Plaintiffs suffered severe or extreme emotional distress and (3) Plaintiff's injuries were actually and proximately caused by the Defendants' outrageous conduct.

127.  Defendants engaged in conduct described herein of their own volition, with the intention of – or reckless disregard of – the probability of causing severe or extreme emotional distress to Plaintiffs.  Plaintiffs' rights to speak up against sexual abuse/harassment and to submit grievances are fully protected by United States of America Constitution; yet, Plaintiffs were denied their rights.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

128. RPDC, CBDC, and JBDC outrageous conduct, caused Plaintiffs to suffer severe psychological and emotional damages, subjecting Plaintiffs to possible excessive use of force and death by staff based on Plaintiffs utilizing their protected activities under the United States Constitution.  Upon causing Plaintiffs psychological and emotional injuries, Mental Health services were denied when the need was urgent.

129. As the aforementioned has repeatedly realleged, Plaintiffs were subjected to cruel, inhumane, and conscious shocking treatment and punishment.

130. Plaintiffs were subjected to sexual abuse, isolated living conditions, forced to walk around naked and barefoot on filth, causing Plaintiffs to suffer severe psychological and emotional injuries.

131. As a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiffs have suffered economic, psychological, and emotional damages, and Plaintiffs were obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiffs.

132. Defendants had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

133. Defendants' conduct intentionally and/or recklessly caused extreme emotional distress to the Plaintiffs and has been intentional, reckless, malicious and oppressive, thereby entitling Plaintiff to recover punitive damages.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**32**

## COUNT VIII

**NEGLIGENCE**
**UNDER 42 U.S.C.§1983**
**(Against All Defendants)**

134.  Plaintiffs incorporate by reference each and every allegation contained in all the paragraphs above.

135.  To prevail on their negligence claim, plaintiffs must show that Navegar owed them a legal duty, that it breached the duty, and that the breach was a proximate or legal cause of their injuries. (Sharon P. v. Arman, Ltd. (1999) 21 Cal.4th 1181, 1188 [91 Cal.Rptr.2d 35, 989 P.2d 121].) [1b] The only elements we consider here are duty and causation.  (Merrill v. Navegar, Inc. (2001) 26 Cal.4th 465, 477 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

136.  Duty. A duty arises when the law recognizes a relationship between the Defendant and the Plaintiff requiring the Defendant to act in a certain manner, often with a standard of care, toward the Plaintiff. Defendants owed Plaintiffs a duty to honor their civil rights under the United States Constitution.

137.  Breach of Duty. Defendants failed to exercise reasonable care in fulfilling the foregoing duty. Retaliation was promoted and executed against Plaintiffs and other inmates whom exercised their rights under the United States Constitution, to include but not limited to, as follows:  Upon grievances being submitted based on unlawful staff conduct, a protected activity, Plaintiffs were either transferred to another jail before being heard and obtaining a response, or would receive a response not pursuant to policy, or Plaintiffs were subjected to cruel and unusual punishment.  Moreover, Plaintiffs were subjected to cruel and unusual punishment, when they refused to obey an illegal order or directive, protected activity, (e.g. ordered to strip naked and sexually abused).

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**33**

138. Plaintiffs were directly and substantially harmed by Defendants' conduct as presented *supra.*

139. Due to Defendants' breach of duty, Plaintiffs suffered and continue to suffer psychological and emotional damages.

140. As a proximate result of the negligence, carelessness, recklessness and unlawfulness of Defendants, Plaintiffs sustained injuries to their health, sustaining injury to their body and shock to their nervous systems and persons, all of which said injuries have caused and continue to cause Plaintiffs great mental pain and suffering.

141. Defendants negligently trained and maintained a practice and custom of negligent, incompetent, unfit, careless, and reckless staff with insufficient morals and criminal personalities – as displayed by their aforementioned unlawful and unwarranted conduct.

142. The Defendants breached this duty based on the acts and conduct outlined herein and engaged in conduct that was negligent, careless, reckless, and unlawful so as to proximately cause the incidents, altercations, and thereby proximately and directly caused the hereinafter described injuries and damages to Plaintiffs.

143. As a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiffs have suffered economic, psychological, and emotional damages, and Plaintiffs were obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

144. Defendants had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

145. Defendants' conduct intentionally and/or recklessly caused extreme emotional distress to the Plaintiffs and has been intentional, reckless, malicious and oppressive, thereby entitling Plaintiff to recover punitive damages.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**34**

## COUNT IX

**CONVERSION**
**(Against Defendants XXXXX)**

146. Plaintiffs incorporate by reference each and every allegation contained in all the paragraphs above.

147. Under California law, the elements required to prove a claim of conversion are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages. *Aronson v. Bank of America Nat. Trust & Savings Ass'n*, Cal. 2d 640, 72 P.2d 548 (1937); *Welco Electronics, Inc. v. Mora*, 223 Cal. App. 4th 202, 166 Cal. Rptr. 3d 877 (2d Dist. 2014).

148. During jail transfers, in an effort to silence Plaintiffs, after Plaintiffs would submit a grievance regarding sexual abuse and/or staff misconduct, Plaintiffs' personal property would come up missing, stolen, or thrown away.

149. Plaintiffs' Substantive Due Process and Procedural Due Process were violated with an indifferent and conscious disregard to the deprivation of Plaintiffs life, liberty, or property for no justifiable or sufficient purpose.

150. As a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiffs have suffered economic, psychological, and emotional damages, and Plaintiffs were obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

151. Defendants had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**35**

152.  Defendants' conduct intentionally and/or recklessly caused extreme emotional distress to the Plaintiffs and has been intentional, reckless, malicious and oppressive, thereby entitling Plaintiff to recover punitive damages.

## COUNT X

**DECLARATORY RELIEF**
**(Against all Defendants)**

153.  Plaintiffs incorporate by reference each and every allegation contained in all the paragraphs above.

154.  "[D]eclaratory relief is designed in a large part as a practical means of resolving controversies, so that parties can conform their conduct to the law and prevent future litigation." *Meyer v. Sprint Spectrum L.P.*, (2009) 45 Cal.4th 634, 648.

155.  An actual controversy has arisen and now exists between Plaintiffs and Defendants, concerning their respective rights and duties under the United States Constitution.

156.  Plaintiffs contend, while incarcerated in the County of Riverside jails, Defendants have violated Plaintiffs' civil rights protected under the United States Constitution, such as:  Violation of Court order; frequent denial of grievance forms; non adherence to grievance policy; repeated unjustifiable jail transfers, prior to Plaintiffs obtaining their grievance Responses, in an effort to silence Plaintiff; inmates' personal property stolen or thrown away during jail transfer; death threats; housed in a small cell with overpowered lights approximately 20-30 hours a day with no access to fresh air, a view of sky, and windows; denied daily recreation or time to exercise out-of-cell or provided inadequate recreation, only allowed approximately 1 ½ hours to exercise out-of-cell, once or twice a week in a small cell room or cage; denied adequate programs and only given access to view a small TV for about 14 hours a day; filthy environment, where Plaintiffs are forced

to walk around jail barefoot, in underwear, 99% naked on a daily basis; denied shoes or any adequate foot protection; provided one set of clothing a week; forced to exercise on dirt, concrete, and steel barefoot in filth on a daily basis; denied adequate cleaning solution and supplies to clean cell and dayrooms, filth builds up, causing insects to run rampant throughout the jail; Plaintiffs are provided inadequate bedding and clothing (e.g. one set of socks, t-shirt, orange shirt/pants, and boxers/briefs in unusable condition once a week); and Plaintiffs and other inmates subjected to sexual abuse while executing unlawful strip searches on a regular basis due to their established custom of sexual abuse and harassment upon inmates.

157. Plaintiffs maintained their position that Defendants violated Plaintiffs civil rights due to Plaintiffs exercising protected activities under the United States Constitution.

158. Plaintiffs therefore request a judicial determination of the rights, obligations, and interest of the parties with regard to Plaintiffs' civil rights protected under the United States Constitution, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations, and interests with regard to this issue.

159. Plaintiffs request a decree declaring that Defendants are to adhere to court orders; declaring that Plaintiffs are to be free from directives to strip naked and be sexually abused; free from death threats; free from poor and filthy living conditions and forced to walk around without adequate clothing nor shoes; free from retaliation, free from frequent jail transfers to silence Plaintiffs from speaking out against illegal orders or directives against them, *inter alia*.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**37**

## PUNITIVE DAMAGES
### (Against All Defendants)

160.  Plaintiffs incorporate by reference each and every allegation in all paragraphs above.

161.  As a consequence of all the Defendants' wrongful conduct, as set forth herein, constitutes malicious conduct involving sexual abuse, theft, denying Plaintiffs' their protected activity, *inter alia*, while Defendants were acting under color of law, such that Defendants are liable and Plaintiffs are entitled to punitive damages which Plaintiffs seek judgment of this Court.

162.  Plaintiffs' damages are a result of intentional, malicious, reckless, oppressive, and/or fraudulent actions directly perpetrated by the Defendants and/or actions imputed to the Defendants through their training and custom.

163.  Defendants had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs.

164.  The Defendants were acting under the color of state law, when they denied Plaintiffs their privileges and protections secured by the United States Constitution – as All Defendants acting as law-enforcement officials during the course of their actions.

165.  Plaintiffs intend to show that the factors the jury may consider in determining the amount(s) of punitive damages, which should be awarded include:

      a.  The nature of the wrong committed by Defendants;

      b.  The character of Defendants' conduct;

      c.  The degree of culpability of Defendants;

      d.  The situation and sensibilities of the parties concerned; and

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

e. The extent to which Defendants' conduct offends a public sense of Justice and propriety.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs will ask for the following for each Cause of Action to be awarded, jointly and severally:

1. Non-Economic Damages:  $1,000,000.00;
2. Treble Damages in the amount of $3,000,000.00;
3. For Punitive Damages in the amount of $1,000,000.00;
4. For Attorney's Fees and Costs of this action; and
5. Such further or additional relief as the Court deems proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  March 14, 2024                    Respectfully submitted,

                                    **BOND LAW LEGAL GROUP**

                            By:_____
                                    Royal Bond, Esq.,
                                    Attorney for PLAINTIFFS

---

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**39**

## **VERIFICATION**

We are the Plaintiffs in this action. We have read the foregoing Verified Civil Complaint for Damages and Declaratory Relief, and it is true of our own knowledge, except as to those matters stated on information or belief, and as to those matters, we believe it to be true.

We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 14, 2024 at Menifee, California.


_/s/Louis Hall III_____
LOUIS HALL III, Plaintiff


_/s/LaShawn D. Lewis_____
LASHAWN D. LEWIS, Plaintiff

---

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**40**